Desmond, J.
The proceeding was brought under section 21 of the Membership Corporations Law for the confirmation of a lease theretofore made without court approval between appellant Italian Society of M. S. Cristoforo Colombo, Inc., as owner, and respondent Trapasso Oldsmobile, Inc., as tenant, of a vacant piece of land in Niagara Falls, N. Y., adjoining the clubhouse of the Society. The Society was organized in 1903 and chartered in 1904 as a membership corporation of persons of Italian descent residing in Niagara Falls, its expressed object being “ to encourage, promote and cultivate social and fraternal virtues and voluntary aid among its members ” (Certificate of Incorporation, par. 2). Its constitution and by-laws show that its principal purpose was to create from members’ dues funds from which sickness, death and funeral benefits would be paid.
This appeal is by our leave from a unanimous no-opinion order of Appellate Division, Fourth Department, affirming a Special Term order, also without opinion, made after hearings. The case was in the lower courts twice. The lease was made in August, 1955 to run for five years from April 1, 1957, and was a renewal of another five-year lease between the same parties which would expire March 31,1957. After the renewal lease *136 had. been signed, someone remembered section 21 and its requirement that a lease for more than five years of a membership corporation’s real property requires leave of the Supreme Court. This proceeding followed. The renewal lease had been signed by the then president of the Society and authorized by 11 of its 13 directors or trustees.
When the proceeding first came to Special Term on petition of the lessee it was opposed by four intervening members. They contended, as the corporation itself under new officers is now contending, not only that the lease is not in the best interests of the corporation but that it is and was invalid because never submitted to or approved by the members, the assertion of those intervenors being that such membership approval is required. As will appear herein, the members later on disapproved the lease. The question for us is whether the by-laws of the corporation, to which we will refer, forbid the making of such a grant without the approval of the members.
At its first appearance at Special Term the proceeding was dismissed without passing on these objections. Special Term at- that time held that section 21 did not subject this lease to this requirement of court approval since (so held the Special Term) it was not a lease “ for more than five years ”. The intervenors appealed from that determination to Appellate Division, Fourth Department, and the Society itself, which by vote of the membership had gotten new officers and trustees, came in as an appellant. In July, 1956 the Appellate Division reversed, holding that this renewal lease, while being in form for a term of five years only, came within the intent of the statute (§21) since it was made 19 months before the expiration of the current term. If this lease did not require court approval then, correctly reasoned the Appellate Division, “ any series of 5-year leases, to take effect in the future, would lawfully encumber the real property for as many years as the board of directors authorizing the same might dictate ” (2 A D 2d 166, 170). The Appellate Division, therefore, remitted the matter to Special Term to pass on the merits of the application. The Appellate Division noted in its opinion on that first appeal that the Society had elected new directors and officers since the making of the renewal lease and that the Society and its members were now opposed to the transaction. The Appellate *137 Division (see 2 A D 2d 168-169) held that neither the statutes nor the by-laws of the Society required consent of the members. We are now told that this Appellate Division holding is ‘ ‘ the law of the case ’ ’ but it, of course, is not binding on us. Our view is that approval by the membership was required. Not only was that approval not given but there was actually a membership vote against the renewal lease before the court passed on the merits. We hold that the lease was invalid under the by-laws and not capable of confirmation by the court.
Now we resume our history of the case. After the Appellate Division reversal, back it came to Special Term for trial. The corporation itself, through its new officers, by leavé of the Appellate Division, put in an answer which set up a number of defenses, the second and third of which alleged that the renewal lease was invalid since it lacked the approval of the members which, alleged the answer, was required by law and custom. These defenses included statements that not only had the membership at a regular meeting in 1956 repudiated the purported lease but that prior thereto more than a majority of the members had signed a petition similarly repudiating it.
The trial produced proof both ways on the question of whether the new lease was advantageous to the corporation. Since Special Term found that it was beneficial and the Appellate Division affirmed, there is no point in discussing this proof. The question of law before us is as to whether this was a valid lease and that comes down to a question of whether the by-laws required approval of the members and, if so, whether such by-law was valid and what was its effect? The statute (§21) says that no such corporation shall lease its real property unless authorized by a two-thirds vote of its directors, and there was such director authorization here. However, that requirement of the statute does not forbid such a corporation making for itself such other requirements for validity as it desires. We find such a further requirement in article 101 of the corporation’s by-laws (Exhibit A here) which, written in the Italian language 50 years ago, is as follows: “ Art. 101. — Qualunque deliberazione non prescritta nello statuto e regolamento della Societá, verrá adottata a maggioranza di voti.” The booklet Exhibit A contains what purports to be an English translation of these by-laws, and the record shows that while the by-laws *138 were adopted in the Italian language, some of the members, years ago (about 1938) took it upon themselves to translate them into English. The purported English translation of article 101 as it appears in the booklet Exhibit A is as follows: “ Art. 101. — Any article not contemplated by the by-laws shall be adopted by a majority vote.”
Thus, the translators interpreted the Italian word “deliberazione ’ ’ to mean ‘ ‘ article ’ ’, an obvious error. The Italian word for the English word “ article ” is “ articolo ” and the Italian word “articolo ” appearing in article 103 of the by-laws is translated in the English version thereof as “article”. In context the word “deliberazione” in article 101 necessarily means something like “ proposition ” or “ resolution ” and this meaning is confirmed by Hoare’s authoritative Italian Dictionary which at page 204 gives £ ‘ resolution ’ ’ as one meaning of the word “deliberazione” (the same meaning is given in MacDonald’s Italian-English Commercial Dictionary). We note that the word “ deliberazioni ” (plural form) appears in article 86 of the by-laws and that the translation thereof in the English version thereof is “ deliberations ”. Under these by-laws the duties or powers of the trustees are extremely limited. Article 38 says that they are to supervise the funds and bank accounts of the Society, examine the treasurer’s books, make financial reports to the Society every three months and assist the secretaries in their work. On the other hand, the by-laws (see, for instance, arts. 14, 18, 23, subd. [c]; arts. 43, 86, 88, 91, 96, 97, 98, 100, 102) leave to vote of the members almost every other problem, including such small matters as taking in new members, fixing the membership fees, choosing a physician, holding a dance or other party, celebrating Columbus Day, etc., etc. The committees are required to report not to the trustees or officers but to the members (art. 88). The whole scheme of the by-laws, particularly articles 86 and 101, shows that the intent is that every decision of this corporate group is to be made by a majority vote of the members. We cannot believe that it was intended that so important a matter as leasing the Society’s real property should be left to the trustees alone. One cannot read through this constitution and by-laws (Exhibit A) without concluding that, as distinguished from more conventional schemes of organization, this Society was to be run by vote of *139 its members. We see nothing in the Membership Corporations Law or other statute or other controlling law that interferes with such an arrangement. Section 27 of the General Corporation Law says that the business of a corporation shall be managed by its board of directors but this is subject to the right of every corporation (General Corporation Law, § 14), including a membership corporation (Membership Corporations Law, § 20), to make its own by-laws not inconsistent with law. Under section 21 of the Membership Corporations Law, as we have pointed out, a lease of real property requires authorization by a vote of two thirds of the directors, but we see no reason why the corporation itself should not impose the further requirement of a majority vote of the members themselves. The strongest confirmation of all this is the fact that when the original lease was made in 1952 it was approved by the members as well as by the trustees. Also, it is quite clear that the members thought they had this power as to leasing since they not only circulated and signed a petition disapproving the renewal but at the annual meeting of the corporation in January, 1956, several months before the making of the order here appealed from, the approximately 120 members present unanimously adopted a resolution disaffirming and repudiating the attempted renewal lease. Respondent seems to question whether this action was taken at the membership meeting but it is set out in full in the Society’s official minutes received in evidence and there is nothing in the record to contradict it.
Thus, when the matter came before Special Term for the second time there was nothing before the court on which it could validly act because the renewal lease which the court was asked to confirm had been disapproved by the members whose approval was required by the by-laws. Since all this is so, we do not consider it necessary to discuss the strong proof produced by the corporation of a long-standing custom that all matters like this were submitted to the membership including, as we have pointed out, this very lease as originally made in 1952.
The briefs contain elaborate analyses of several cases decided under section 21 and under the earlier statutes cited in Wyatt v. Benson (4 Abb. Prac. 182) and Dudley v. Congregation of St. Francis (65 Hun 21). None of those decisions are important to us since here the difficulty is that the lease never had a valid *140 inception since it was never approved by the members as required by the internal law of the corporation.
The order appealed from should be reversed, with costs in all courts, and the petition dismissed.
Chief Judge Conway and Judges Fuld, Froessel and Burke concur with Judge Desmond ; Judges Dye and Van Voorhis dissent and vote to affirm upon the ground that under section 27 of the General Corporation Law the business of the corporation is to be managed by its board of trustees and that there is nothing in this by-law that nullifies this power.
Order reversed, etc.